CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Sara Gunderson, Esq., SBN 302582
<u>Mail</u>: PO Box 262490
San Diego, CA 92196-2490
<u>Delivery</u>: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
sarag@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Shirley Lindsay**, <br><br> Plaintiff, <br><br> v. <br><br> **Overland Partners Sepulveda, LLC**, a California Limited Liability Company; <br> **Starbucks Corporation,** a Washington Corporation; <br><br> Defendants | **Case:** 2:18-CV-01917-GW-PLA <br><br> **Plaintiff's Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment** <br><br> Date: December 10, 2018 <br> Time: 1:30 p.m. <br> Ctrm: 9D (9th Floor) <br><br> Hon. Judge George H. Wu |

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES ..................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES .......................... 1

   I. PRELIMINARY STATEMENT ....................................................... 1

   II. RELEVANT FACTS ........................................................................ 1

   III. LEGAL STANDARD ..................................................................... 3

   IV. THE INACCESSIBLE CONDITIONS ....................................... 3

      A. Plaintiff is Disabled....................................................................... 5

      B. Defendants Own, Operate, Lease or Lease to a Place of Public Accommodation................................................................................ 6

      C. The Starbucks Had Barriers That Were Readily Removed ......... 6

      D. The Barriers Are and Were Readily Achievable to Remove..... 10

      E. The Plaintiff Personally Encountered These Violations and Experienced Difficulty and Discomfort ......................................... 11

   V. THE VIOLATION OF THE UNRUH CIVIL RIGHTS ACT ..... 11

   VI. REMEDIES................................................................................... 11

   VII. CONCLUSION............................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.* 603 F.3d 666 (9th Cir. 2010) .................................................................. 4

*Celotex Corp. v. Catrett* 477 U.S. 317 (1986) .......................................... 3

*Chapman v. Pier 1 Imports (U.S.) Inc.* 631 F.3d 939 (9th Cir. 2011) . 4, 7

*Cullen v. Netflix, Inc.*,
  880 F.Supp.2d 1017 (N.D. Cal. 2012) ............................................... 11

*Kohler v. Flava Enterprises, Inc.*, 826 F. Supp. 2d 1221, 1227-28 (S.D. Cal. 2011) .............................................................................................. 9

*Moeller v. Taco Bell Corp.* 816 F.Supp.2d 831 (N.D. Cal. 2011) ........... 4

*Molski v. M.J. Cable, Inc.*,
  481 F.3d 724 (9th Cir. 2007) ....................................................... 11, 12

*Rush v. Denco Enterprises, Inc.*, 857 F. Supp. 2d 969 (C.D. Cal. 2012). 7

**Statutes**

2010 Standards § 208.2.4 ....................................................................... 7

42 U.S.C. § 12102(2)(A) ........................................................................ 5

42 U.S.C. § 12181(7)(B) ........................................................................ 6

42 U.S.C. § 12181(7)(F) ......................................................................... 6

42 U.S.C. § 12188(a) .............................................................................. 5

42 U.S.C. §§ 12183(a)(2) ....................................................................... 5

Cal. Civ. Code § 55.56(a) ..................................................................... 11

Cal. Civ. Code § 55.56(b) ..................................................................... 12

Civ. Code § 51 (f) ................................................................................. 11

**Other Authorities**

1991 Standards § 4.1.2(5) ....................................................................... 7

1991 Standards § 4.1.2(5)(b) ................................................................... 7

1991 Standards § 4.6.3 ............................................................................ 8

1991 Standards § 4.6.4 ............................................................................ 8

1991 Standards §§ 4.1.2(7)(a), 4.30.7 ..................................................... 8

2010 Standards § 502.4 ........................................................................... 8

2010 Standards § 502.4 Advisory ........................................................... 8

2010 Standards 502.4 .............................................................................. 8

28 C.F.R. § 36.211(a) .............................................................................. 9

28 C.F.R., Part 36, Appendix C, section 36.211 ..................................... 9

CBC § 1129B3 ........................................................................................ 8

CBC § 1129B4 ........................................................................................ 8

Department of Justice, Technical Assistance Manual on the American
   with Disabilities Act (BNA) §§ III-4.4100 (1991) ............................... 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

Plaintiff Shirley Lindsay suffers from arthritis (osteoarthritis of multiple joints; spinal stenosis of the lumbar spine; and essential hypertension) of her hands, knees, and hips. She alternates using both a cane and wheelchair for mobility. Ms. Lindsay resides in Los Angeles County, where she shops, dines, travels, and visits with friends and family. Unfortunately, on many occasions, she has had to deal with the stress and frustration of the lack of accessible parking, the lack of accessible paths of travel, and other features that non-disabled people take for granted.

Ms. Lindsay is frustrated by the fact that the Defendants have failed, for years, to provide accessible parking, an accessible path of travel, and an accessible transaction counter. This is illegal and discriminatory and has been for more nearly 30 years. There is no dispute that Ms. Lindsay is entitled to statutory penalties of $8,000. There is no defense in this case.

## II. RELEVANT FACTS

Plaintiff Shirley Lindsay suffers from arthritis (osteoarthritis of multiple joints; spinal stenosis of the lumbar spine; and essential hypertension) of her hands, knees, and hips. She alternates using both a cane and wheelchair for mobility. (SUF #1). Ms. Lindsay drives a specially equipped van with a ramp that deploys from the passenger side of the van to accommodate her wheelchair. (SUF #2). Ms. Lindsay has a Disabled Person Parking Placard issued to her by the California Department of Motor Vehicles. (SUF #3).

The Starbucks ('Starbucks') is located at or about 4114 Sepulveda Blvd., Culver City, California. (SUF #4). Defendant Starbucks

1  Corporation owned the Starbucks in December 2017 and January 2018,
2  and does so currently. (SUF #5). Defendant Overland Partners Sepulveda,
3  LLC owned the property on which the Starbucks is located in December
4  2017 and January 2018, and does so currently. (SUF #6). The Starbucks
5  is a business establishment and place of public accommodation. (SUF #7).
6      On December 24, 2017, and January 12, 2018 Ms. Lindsay went to
7  the Starbucks with the intent to purchase gift cards and a drink. (SUF #8).
8  She wanted to sit with her family and enjoy the outdoor ambience at
9  Starbucks. On the date(s) of her visit, she was relying on a wheelchair for
10 mobility. (SUF #9). Parking spaces are one of the facilities, privileges and
11 advantages reserved by Defendants to persons of the Starbucks. (SUF
12 #10). When Ms. Lindsay arrived at the Starbucks, she attempted to park
13 in the parking space designated for use by persons with disabilities. (SUF
14 #11). However the disabled parking spaces were not accessible to Ms.
15 Lindsay. (SUF #12). The parking stall and access aisle of the disabled
16 parking space in front of the Starbucks contain slopes and cross-slopes.
17 (SUF #13). Cross-slopes present a difficulty for Ms. Lindsay because
18 they cause the wheels of her wheelchair to tip in different directions. (SUF
19 #14). Additionally, the parking stall and access aisle in front of the
20 building across from the Starbucks are not level with each other because
21 there is a built up curb ramp that runs into the access aisle. (SUF #15).
22 Ms. Lindsay needs the parking stall and access aisle to be level with each
23 other in order to deploy her ramp and exit her vehicle safely. (SUF #16).
24     After she parked and proceeded towards the accessible entrance,
25 Ms. Lindsay found that there is no safe wheelchair accessible route of
26 travel from the boundary of the site to the accessible entrance of the
27 Starbucks. (SUF #17). The public sidewalks terminate after entering the
28 boundary of the property and there is no safe path of travel after that point.

(SUF #18) Inside the Starbucks, although Defendants provided a lowered transaction counter which was less than 36 inches in height, the counter was still not accessible to Ms. Lindsay. (SUF #19). The Defendant crowded the transaction counters with merchandise and displays, which narrowed the clear width of the counter to less than 36 inches. (SUF #20).

Ms. Lindsay lives in Los Angeles County and shops, seeks services, and otherwise patronizes businesses throughout the County. (SUF #21). Ms. Lindsay would love to be able to patronize the Starbucks. It is well reviewed and conveniently located for her. (SUF #22).

## III. LEGAL STANDARD

Pursuant to section 56 of the Federal Rules of Civil Procedure, a party can bring a motion for summary judgment where there is no genuine dispute as to any material fact. Motions for summary judgment are not "disfavored." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). In the present case, there can be no genuine dispute over the facts of the case and those facts inform the court and the parties that it would be a waste of judicial resources for this issue to proceed to trial. There is no genuine issue of material fact and this court should grant the plaintiff's partial motion for summary judgment.

## IV. THE INACCESSIBLE CONDITIONS

Under Title III of the Americans With Disabilities Act of 1990 ("ADA"), the general rule is that: "No individual shall be discriminated against on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. §

12182(a). The term "discrimination" can be misleading. The ADA applies not just to intentional discrimination but to thoughtlessness and indifference:

> Its passage was premised on Congress's finding that discrimination against the disabled is most often the product, not of invidious animus, but rather of thoughtlessness and indifference, of benign neglect, and of apathetic attitudes rather than affirmative animus. The concept of "discrimination" under the ADA does not extend only to obviously exclusionary conduct—such as a sign stating that persons with disabilities are unwelcome or an obstacle course leading to a store's entrance. Rather, the ADA proscribes more subtle forms of discrimination—such as difficult-to-navigate restrooms and hard-to-open doors—that interfere with disabled individuals' "full and equal enjoyment" of places of public accommodation.

*Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944-45 (9th Cir. 2011) (internal quotes and citations removed for readability).

To succeed on his Title III, ADA claim, "a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*, 603 F.3d 666, 670 (9th Cir. 2010). "The third element—whether plaintiffs were denied public accommodations on the basis of disability—is met if there was a violation of applicable accessibility standards." *Moeller v. Taco Bell Corp.*, 816 F.Supp.2d 831, 847 (N.D. Cal. 2011) *citing*, *Chapman*, 631 F.3d at 945. This is because discrimination is defined both as either a failure to ensure that alterations are "readily accessible to and useable by persons with disabilities" and, where there are no alterations, "a failure to remove architectural barriers…in existing facilities…where such removal is

4

readily achievable." 42 U.S.C. §§ 12183(a)(2); 12182(b)(2)(A)(iv). Thus, the following is a simplified statement of the elements necessary for the plaintiff to prove discrimination under this section:

1. Plaintiff must be disabled. 42 U.S.C. § 12182(a);
2. The defendants' facility must be a place of "public accommodation" and, therefore, governed by Title III of the ADA *Id.*;
3. The defendants must be responsible parties, i.e., operators of a service, advantage, privilege, or accommodation, *Id.*;
4. The defendants' facility must have either undergone an alteration that did not comply with the access standards or contain an easily removed barrier that the defendants failed to remove. 42 U.S.C. §§ 12183(a)(2); 12182(b)(2)(A)(iv);
5. Plaintiff must have actually encountered this non-removed and unlawful barrier. 42 U.S.C. § 12188(a).

As discussed below, Plaintiff's civil rights were violated because the defendants failed to provide accessible parking, accessible transaction counter and accessible route of travel. Plaintiff will discuss each element, seriatim.

### A. Plaintiff is Disabled

The Plaintiff is a woman with severe mobility impairments who cannot walk and uses a wheelchair for mobility. (SUF #1). There can be little doubt that she fits the qualification under the Americans with Disabilities Act as a person with a disability. 42 U.S.C. § 12102(2)(A) (defining a physical impairment substantially affecting a major life activity as qualifying as a disability). Given Plaintiff's inability to walk, this is not a genuine issue.

### B. Defendants Own, Operate, Lease or Lease to a Place of Public Accommodation

Starbucks is an establishment serving food or drinks. Restaurants, bars, or other establishments serving food or drink are expressly identified under the ADA as places of public accommodation. 42 U.S.C. § 12181(7)(B). Therefore, Starbucks is a place of public accommodation, which the Defendants admit. (SUF # 7). The Defendants own and/or operate this place of public accommodation. (SUF # 5 & 6). The Defendants, therefore, have an obligation to comply with the anti-discrimination provisions of Title III of the Americans with Disabilities Act.

### C. The Starbucks Had Barriers That Were Readily Removed

The ADA defines "discrimination" as a failure to remove architectural barriers where it is readily achievable to do so. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "barrier" is not defined in the Act itself but is defined in the Technical Assistance Manual:

> III-4.4100: What is an architectural barrier? Architectural barriers are physical elements of a facility that impede access by people with disabilities. These barriers include more than obvious impediments such as steps and curbs that prevent access by people who use wheelchairs.

Department of Justice, Technical Assistance Manual on the American with Disabilities Act (BNA) §§ III-4.4100 (1991). Case law is more specific. "To determine if Plaintiff describes an 'architectural barrier' the Court must turn to the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG"). If an element does not meet or exceed ADAAG standards, it is considered a barrier to access." *Rush v.*

*Denco Enterprises, Inc.*, 857 F. Supp. 2d 969, 973 (C.D. Cal. 2012) (internal cites omitted). "Any element in facility that does not meet or exceed the requirements set forth in the ADAAG is a barrier to access." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (identifying this as the formal position of the Department of Justice). These are "objective" and "precise" standards and "the difference between compliance and noncompliance" is "often a matter of inches." *Id.*

### 1. *The lack of accessible parking constitutes a barrier*

Under the 1991 Standards, any business that provides parking spaces must provide parking spaces marked as reserved for persons with disabilities. 1991 Standards § 4.1.2(5)[1]. One in every eight of those accessible parking spaces, but not less than one, must be a "van" accessible parking space, *i.e.*, having an eight foot (96 inch wide) access aisle. 1991 Standards § 4.1.2(5)(b). Under the 2010 Standards, one in every six of those accessible parking spaces, but not less than one, must be "van" accessible, i.e. having an eight foot access aisle, or alternatively, having a stall measuring 132 inches in width with a 60 inch adjacent access aisle. 2010 Standards § 502.2.[2] Further, to be compliant,

---

[1] The 1991 Standards are found at 28 C.F.R., Part 36, Appendix "D" and the 2010 Standards are found at 36 C.F.R., Part 1191, Appendices "B" and "D." The correct title of the 1991 Standards is "1991 Standards for Accessible Design." However, in the earliest published decisions, courts and practitioners mistakenly referred to these Standards as the Americans with Disabilities Act Accessibility Guidelines (ADAAG), perhaps not understanding that the ADAAG promulgated by the Access Board were not the enforceable Standards but merely guidelines or recommendations made to the Department of Justice. When the DOJ adopted them, they were renamed as Standards in the Federal Register. But the original name stuck.

[2] The Plaintiff recognizes that, technically, either the 1991 Standards or the 2010 Standards govern in this case, but not both simultaneously. However, both Standards are cited to demonstrate that it does not matter which Standard is applied because the parking did not comply with either Standard.

"[a]ccessible parking spaces shall be designated as reserved by a sign showing the symbol of accessibility []. [Van-accessible spaces] shall have an additional sign 'Van-Accessible' mounted below the symbol of accessibility. Such signs shall be located so they cannot be obscured by a vehicle parked in the space." 1991 Standards § 4.6.4.

Furthermore, all accessible parking spaces must be outlined in blue and display the international symbol of accessibility. CBC § 1129B4; 1991 Standards §§ 4.1.2(7)(a), 4.30.7. "The words "NO PARKING" shall be painted on the ground within each 8-foot… loading and unloading access aisle. This notice shall be painted in white letters no less than 12 inches… high and located so that it is visible to traffic enforcement officials." CBC § 1129B3.

Additionally, under the 1991 Standards, parking spaces and access aisles must be level with surface slopes not exceeding 1:50 (2%) in all directions. 1991 Standards § 4.6.3. Under the 2010 Standards, access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. 2010 Standards 502.4. "Access aisle are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles." 2010 Standards § 502.4 Advisory. No more than a 1:48 slope is permitted. 2010 Standards § 502.4.

Here, the parking lot serving the Starbucks did not provide a compliant accessible parking space on the date(s) of Plaintiff's visit, in December 2017 and January 2018. (SUF #11-16).

Further, the ADA not only requires that businesses provide accessible facilities, i.e. facilities that physically comply with the Access Standards, but they have an ongoing duty to ensure that those accessible features remain ready to be used by persons with disabilities: "A public accommodation shall maintain in operable working condition those

features of facilities and equipment that are required to be readily achievable to and usable by persons with disabilities . . .." 28 C.F.R. § 36.211(a). The Department of Justice explains the purpose of this Regulation:

> Section 36.211 Maintenance of Accessible Features
>
> Section 36.211 provides that a public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part. The Act requires that, to the maximum extent feasible, facilities must be accessible to, and usable by, individuals with disabilities. This section recognizes that it is not sufficient to provide features such as accessible routes, elevators or ramps, **if those features are not maintained in a manner that enables individuals with disabilities to use them.**

28 C.F.R., Part 36, Appendix C, § 36.211 (emphasis added). "A violation of the ADA can occur where a defendant's business is in compliance with ADAAG requirements, but that defendant does not maintain its compliant features in a useable manner." *Kohler v. Flava Enterprises, Inc.*, 826 F. Supp. 2d 1221, 1227-28 (S.D. Cal. 2011). Therefore, not only are Defendants required to provide an accessible parking space. They are also required to maintain the accessible parking space so that it remains useable for persons with disabilities.

### 2. *The lack of accessible route of travel constitutes a barrier*

Under the ADA, there must be an accessible route of travel from the boundary of the site, i.e., from the public street and public sidewalks at "site arrival points" to the building entrances on the site. 1991 Standards (1991 Standards) § 4.1.2(1); 2010 Standards (ADAAS) § 206.2.1.

Here, there is no safe wheelchair accessible route of travel from the boundary of the site to the accessible entrance of the Starbucks. (SUF 17-18). This is in violation of the law.

### 3. *The lack of accessible transaction counter constitutes a barriers*

In areas used for transactions where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one of each type shall have a portion of the counter which is at least 36 inches in length with a maximum height of 36 inches above the floor. 1991 Standards § 7.2(1). Under the 2010 Standards, where the approach to the sales or service counter is a parallel approach, such as in this case, there must be a portion of the sales counter that is no higher than 36 inches above the floor and 36 inches in width and must extend the same depth as the rest of the sales or service counter top. 2010 Standards § 904.4 & 904.4.1.

Here, no such accessible transaction counters have been provided, in violation of the ADA. (SUF #19 & 20).

### D. The Barriers Are and Were Readily Achievable to Remove

Providing and maintaining accessible parking, accessible transaction counter and accessible path of travel is readily achievable. Barrier removal is presumed readily achievable where it is easily accomplishable and able to be carried out without much difficulty or expense. 28 C.F.R. § 36.304(a). The Code of Federal Regulations enumerates non-exclusive examples of barriers whose removal is presumed readily achievable, including creating designated accessible parking spaces, making curb cuts in sidewalks and entrances and rearranging display racks and other furniture. 28 C.F.R. § 36.304(a).

In sum, the Defendant failed to remove barriers that were readily removed and, therefore, violated the Plaintiff's rights under the ADA.

### E. The Plaintiff Personally Encountered These Violations and Experienced Difficulty and Discomfort

Ms. Lindsay personally encountered the lack of accessible parking, the lack of an accessible path of travel, and the lack of an accessible transaction counter during her December 24, 2017, and January 12, 2018 visits, which caused her difficulty, discomfort and frustration as a result.

## V. THE VIOLATION OF THE UNRUH CIVIL RIGHTS ACT

The Unruh Civil Rights Act provides that "a violation of the right of any individual under the Americans with Disabilities Act of 1990 shall also constitute a violation of this section." Civ. Code § 51 (f). "A violation of the ADA is, by statutory definition, a violation of both the Unruh Act and the DPA." *Cullen v. Netflix, Inc.*, 880 F.Supp.2d 1017, 1023 (N.D. Cal. 2012). "Because the Unruh Act is coextensive with the ADA and allows for monetary damages, litigants in federal court in California often pair state Unruh Act claims with federal ADA claims." *Molski*, 481 F.3d at 731. As discussed above under section "IV", the defendants violated the ADA. Thus, there has been a per-se violation of Unruh.

## VI. REMEDIES

Plaintiff seeks statutory damages. Statutory damages can be recovered for a violation of the Unruh Civil Rights Act "if the violation denied the plaintiff full and equal access to the place of public accommodation on a particular occasion." Cal. Civ. § 55.56(a). A denial of full and equal access takes place where a plaintiff "personally encountered" the violation or was deterred from accessing it due to actual knowledge of barriers that would have denied the plaintiff full and equal access, and

this resulted, or would have resulted in, "difficulty, discomfort or embarrassment." Cal. Civ. § 55.56(b-d).

In the present case, all these elements are met. Ms. Lindsay personally encountered the access standards violations on December 24, 2017, and January 12, 2018. However, Ms. Lindsay only seeks two statutory penalties: one for her personal encounter with the barriers to access and one for deterrence due to her actual knowledge of these barriers to access. There are no genuine issues in dispute here and Ms. Lindsay is entitled to the statutory award of $8,000 under the Unruh Civil Rights Act her personal encounters and deterrence. "The litigant need not prove she suffered actual damages to recover the independent statutory damages…." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007). Ms. Lindsay seeks an award of $8,000.

## VII.  CONCLUSION

The Plaintiff respectfully requests this Court grant his motion.

Dated: November 1, 2018         CENTER FOR DISABILITY ACCESS

By: /s/ *Sara N. Gunderson*
Sara N. Gunderson
Attorneys for Plaintiff