CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Sara Gunderson, Esq., SBN 302582
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
sarag@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Shirley Lindsay**,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>**Overland Partners Sepulveda, LLC**, a California Limited Liability Company;<br>**Starbucks Corporation,** a Washington Corporation;<br><br>　　　　Defendants. | **Case:** 2:18-CV-01917-GW-PLA<br><br>**Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment, or in the alternative, Partial Summary Judgment**<br><br>Date:　December 10, 2018<br>Time:　1: 30 p.m.<br>Ctrm:　9D (9th Floor)<br><br>Hon. Judge George H. Wu |

## I. PLAINTIFF'S ABILITY TO OVERCOME BARRIERS TO ACCESS THE STORE DOES NOT MOOT HER DISCRIMINATION CLAIM

An argument that is often seen in these cases is that there is no violation because the plaintiff was ultimately able to gain access to the subject property. This is not a valid defense under the law.

1

The Ninth Circuit, sitting en banc, has addressed this misconception. Under the ADA, it is "not necessary" that the barrier "completely preclude the plaintiff from entering or from using the facility in any way," rather the "barrier need only interfere with the plaintiff's full and equal enjoyment of the facility."[1] The law focuses on equality of access not ultimate access. "The standard cannot be *is access achievable in some manner*. We must focus on the equality of access. If a finding that ultimate access could have been achieved provided a defense, the spirit of the law would be defeated. It is clear, that the legislative purpose behind these disability access laws would not support such a finding."[2] In fact, there is an objective standard for determining whether "full and equal" access has been provided. That objective standard is the American with Disabilities Act Accessibility Guidelines or "ADAAG." "The ADAAG provides the objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations."[3]

In *Chapman*, a disabled plaintiff sued a store over the existence of various physical barriers. The defendant responded that "disabled customers can rely upon store clerks" to help them overcome any barriers.[4] The Court rejected the argument and explained why it does not have merit:

> Among the ADA's purposes however, is to eliminate the stereotype of the helpless disabled person completely reliant on the assistance of able-bodied persons to come to their rescue, not to reinforce it. The disabled community fought for, and earned, the right to have stores remove barriers so that disabled customers could use those facilities independently. This court will not reduce [plaintiff] to the need to beg for assistance or to rely upon the hoped-for existence of a kindly store clerk who happens to be in a mood to be helpful. Defendant's obligation is to ensure that the accessibility counter and the aisles are clear. When

---

[1] *Chapman v. Pier 1 Imports (U.S.) Inc.,* 631 F.3d 939, 947 (9th Cir. 2011).
[2] *Boemio v. Love's Restaurant*, 954 F.Supp. 204, 208 (S.D. CA 1997).
[3] *Chapman*, 631 F.3d at 945.
[4] *Id.* at 1007.

it fails to do so, it is in violation of the ADA. It may not rely upon assertions that its store clerks are kind and helpful and would eventually clear the barriers that should not be there in the first place.[5]

In fact, this same principle arose in another of counsel's cases. In that case, the plaintiff sued a gas station under both the ADA and the Unruh Civil Rights Act and alleged that he was denied access because the entrance was not accessible.[6] The defendant argued that the plaintiff could have overcome the barrier by simply seeking assistance from gas station employees: "Defendant appears to suggest that Plaintiff has not shown discrimination under the ADA because he could have requested assistance."[7] The Court rejected the claim and noted that the violation is the failure to remove the barrier in the first place. "Defendant is mistaken. Discrimination includes a failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A) (iv)." *Id.*

Defendant Overland Partners Sepulveda claims that there was no violation because Ms. Lindsay ultimately gained access to the store. However, this type of "equivalent facilitation" argument has already been addressed and rejected by the Ninth Circuit.[8]

## II. LANDLORDS AND TENANTS ARE JOINTLY OBLIGATED TO PROVIDE ACCESSIBLE FACILITIES ON PROPERTY UNDER THEIR CONTROL

The ADA specifically holds anyone in a property's leasing chain liable for violations on that property.[9] The DOJ's Code of Federal Regulations upholds this principle: "Both the landlord who owns the building that houses

---

[5] *Id.* at 1007–8.
[6] *Arroyo v. 9305 Firestone, LLC*, 2011 WL 6177277, *1 (C.D. Cal. 2011).
[7] *Id.* at *2
[8] *Antoninetti v. Chipotle Mexican Grill, Inc.,* 643 F.3d 1165 (9th Cir. 2010); ADAAG § 2.2.
[9] (42 U.S.C. § 12182(a).)

a place of public accommodation and the tenant who owns or operates the place of public accommodation are public accommodations subject to the requirements of this part."[10] Though the C.F.R. recognizes landlords' and tenants' right to allocate responsibility as between the two by contract, the Ninth Circuit has specifically held that such allocation does not bind third parties: "The regulation [28 C.F.R. § 36.201(b)] provides that allocation of responsibility between the landlord and a tenant by lease is effective only '[a]s between the parties.'"[11] The Technical Assistance Manual, Title III, concurs:

> Both the landlord and the tenant are public accommodations and have full responsibility for complying with all ADA title III requirements applicable to that place of public accommodation. The Title III regulation permits the landlord and the tenant to allocate responsibility, in the lease, for complying with particular provisions of the regulation. However, any allocation made in a lease or other contract is only effective between the parties, and both landlord and tenant remain fully liable for compliance with all provisions of the ADA relating to that place of public accommodation.[12]

The Ninth Circuit has clarified that while a lease cannot be used by a landlord to contract away its ADA obligations, it may impose liability for common areas on a tenant:

> "[A tenant] has no preexisting control of a property. Absent a lease, it lacks any legal relationship at all to the property. That it takes control of a part of the property, subject to a lease, imposes ADA compliance obligations on it for that part of the property it controls; the landlord's preexisting obligations to the entire property continue unaffected."[13]

Here, Defendant Starbucks has argued that the mere fact that it is a tenant relieves it of the duty to maintain accessible parking that plainly serves its customers. Notably it has not included as an exhibit the lease that would definitively establish whether or not it exercises control over this area. This

---

[10] (28 C.F.R. § 36.201(b).)
[11] (*Botosan v. Paul McNally Realty*, *supra*, 216 F.3d at p. 833.)
[12] (TAM § III-1.2000.)
[13] *Kohler v. Bed Bath & Beyond of California, LLC* (9th Cir. 2015) 780 F.3d 1260, 1264

evidence is within Defendants' exclusive control, and while Plaintiff sought this information in discovery, Defendants declined to provide it because the case was stayed. While Plaintiff concedes she does not have access to the evidence necessary to prove Defendant Starbucks has liability for the parking area, Plaintiff does not concede that this Defendant has no liability over this area.

### III. THE SALES COUNTER DOES NOT COMPLY WITH THE ADA STANDARDS AND PLAINTIFF IS BEING DENIED FULL AND EQUAL ACCESS

The physical layout of the sales counter is not contested. Starbucks's District Manager explains: "The Subject Starbucks has one continuous counter, less than 36 inches in height and uniform in depth, for the purpose of conducting customer transactions." On this long counter, Starbucks explains that it places two cash registers and displays of merchandise for sale, leaving some space next to each register for customers. Anderson Dec (Docket Entry 52). Plaintiff agrees with this factual assessment, but argues that the failure to provide 36 inches of clear, useable counter width space violates the ADA, while Starbucks disagrees and presents two arguments: (1) the ADA does not require 36 inches of width and (2) Ms. Lindsay has not been denied full and equal access in violation of the ADA. Both of those issues are analyzed and discussed below.

///
///
///
///
///

**A. The ADA has a width requirement for accessible counters. Starbucks's argument to the contrary misconstrues the law and makes no sense.**

Under the ADA Standards, sales counters must comply with one of two configurations.[14] If the counter provides for a forward approach (where knees and toes can go under the counter), a portion of counter must be wheelchair accessible, i.e., *30 inches in length* and no higher than 36 inches.[15] If the counter does not provide for a forward approach—such as in this case—then it necessitates a parallel approach and there must be a portion of accessible counter that is *36 inches in length* and no higher than 36 inches.[16] There is one exception that modifies the length requirement. In alterations, if the compliance would result in a reduction of the number of counters, then the *length need only be 24 inches*.[17] There can be little doubt that the accessibility standards have a width requirement.

But Starbucks argues that there is another exception that modifies—even entirely nullifies—the width obligation. That exception reads: "EXCEPTION: Where the provided counter surface is less than 36 inches (915 mm) long, the entire counter surface shall be 36 inches (915 mm) high maximum above the finish floor."[18] According to Starbucks, this exception means that the 36-inch width requirement *only* applies in two-tier situations, i.e., where there is a higher counter area for ambulatory persons and a lowered portion for wheelchair users. Starbucks explains:

> The main rule of 904.4.1 relied on by Plaintiff does not apply as Starbucks does not maintain a sales counter above 36 inches for some customers, with a separate lowered portion for accessibility. Rather,

---

[14] 36 C.F.R., Part 1191, Appendix D, § 904.4.
[15] 36 C.F.R., Part 1191, Appendix D, § 904.4.2
[16] 36 C.F.R., Part 1191, Appendix D, § 904.4.1
[17] 36 C.F.R., Part 1191, Appendix D, § 904.4.4, Exception.
[18] 36 C.F.R., Part 1191, Appendix D, § 904.4.1, Exception.

Starbucks provided less than 36 inches of counter surface for all customers, and the **entire provided counter** surface is less than 36 inches high. The Exception to 904.4.1 controls… [Defense Brief (Docket Entry 49), p. 5, lines 12-17.]

In other words, according to Starbucks, the ADA Standards only care about width in a two-tier situation but if the counter is all one height, don't worry about it, a business is free to provide a mere 1-inch of width if it chooses. This interpretation is nonsensical. The exception does not say this. It does not waive—or purport to waive—the width requirement for single-height counters. The Standards clearly address width as an important element to accessibility. Why wheelchair users would benefit from a width requirement where a two-tiered counter is found but not benefit from useable width where there is a single-height counter is not explained.

No one likes stooping to use those low counters. But they are necessary for wheelchair users. Thus, under section 904.4.1, to accommodate wheelchair users, there must be at least a 36-inch wide portion of lowered counter. And if the entire counter is 36 inches or less, then 904.4.1's exception does not allow for a two-tiered counter because there is simply not enough counter to provide both a higher section and lowered section. Thus, the entire counter must be at the lower height. Wheelchair users have a civil-right entitlement that ambulatory persons do not have. Thus, in those situations where a 36-inch wide counter cannot be provided—for example, where it is technically infeasible[19]—the height obligation is still in effect. Section 904.4.1's exception is designed to protect wheelchair users and provide maximum accommodation.

Ironically, though, Starbucks's interpretation of section 904.4.1 would permit *exactly what that section seeks to prohibit*. Starbucks believes that so long as its counter is one height, it can dispense with the width requirement.

---

[19] 36 C.F.R., Part 1191, Appendix B, § 202.3, Exception 2.

Starbucks argues that there is *no width requirement* for sales counters unless they are two-tiered.

Considering Starbucks's argument from a different perspective demonstrates its absurdity. Let's assume that a business has a 12-foot long counter that has 9-feet of higher counter space and a 36-inch lowered portion of counter. Consider this photo as a demonstrative example:



Under Starbucks's interpretation, this business must provide that 36-inches of lowered counter space seen on the right side. Starbucks agrees that this business would not be permitted to render portions of that 36-wide counter unusable by placing displays and merchandise on it. But, according to Starbucks, if this business simply lowered the 9-foot higher section so that the entire counter was one, uniform height of 36 inches, then it could fill almost the entire 12-foot length with displays and merchandise, leaving only a few inches for customer transactions. According to Starbucks, there is no width requirement at all for a lowered-single-height counter. And this is exactly what

Starbucks has done. It has a long counter (much longer than 36 inches) but it has chosen to fill it with merchandise displays, leaving only a small portion available for customer transactions. Starbucks is in violation of the ADA.

Starbucks has been sued repeatedly and by a variety of people for this very problem. In *Kalani v. Starbucks*, Starbucks "testified that managers are instructed to place sale and promotional items, so-called "impulse buys," on the transaction counter," which rendered it less than 36 inches in width.[20] The court found that "no reasonable trier of fact could conclude that the point of sale counter satisfies the 36 inch length requirement . . . ."[21] On appeal, the Ninth Circuit affirmed: "The district court also properly granted summary judgment on Plaintiff-Appellee's claim that Starbucks Company failed to maintain a readily accessible thirty-six-inch-long point of sale counter at the Store, as required under the ADA."[22] In *Crandall v. Starbucks*, this was again a key issue: "Even once he got to the counter, Plaintiff further alleges that additional merchandise displays further blocked his reach to the cashier. The 2010 ADAAG requires accessible clear space on the counter be at least 36 inches wide and that the accessible portion of the counter top extend the same depth as the sales or service counter top." [23]

///
///
///
///
///
///

---

[20] *Kalani v. Starbucks Corp.*, 81 F. Supp. 3d 876, 887 (N.D. Cal. 2015).
[21] *Kalani, supra*, 81 F. Supp. 3d at 887.
[22] *Kalani v. Starbucks Coffee Co.*, 698 Fed. Appx. 883, 886 (9th Cir. 2017)
[23] *Crandall v. Starbucks Corp.*, 249 F. Supp. 3d 1087, 1109 (N.D. Cal. 2017)

9

Reply                                                    Case: 2:18-CV-01917-GW-PLA

**B. By failing to provide an accessible sales counter, Starbucks has denied Plaintiff full and equal enjoyment as a matter of law. Plaintiff's ability to overcome barriers to access the store does not moot her discrimination claim.**

Starbucks argues that there is a triable issue whether the merchandizing at issue was a barrier to Plaintiff because Plaintiff alleges that she completed her transaction, raising the inference that the merchandise did not provide any barrier to access. Starbucks' argument misconstrues the facts and the law.

As noted above in relation to the non-compliant parking, the standard is not whether an illegal barrier *prohibits* access. It is about equality of access. That standard is "full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations" at a place of public accommodation.[24] The Ninth Circuit has held that the phrase "full and equal" is a term of art, having specific reference to the ADA Standards: "the ADAAG establishes the technical standards required for 'full and equal enjoyment'" and that "if a barrier violating these standards relates to a plaintiff's disability, it *will* impair the plaintiff's full and equal access" and this "constitutes 'discrimination' under the ADA."[25] In fact, the *Chapman* court, sitting *en banc*, held that this was an objective test looking to the ADA Standards and not a subjective one that relied upon the plaintiff's actual experience:

> A disabled person who encounters a "barrier," i.e., an architectural feature that fails to comply with an ADAAG standard relating to his disability, suffers unlawful discrimination as defined by the ADA. 42 U.S.C. § 12182(b)(1)(A)(i). Indeed, by "establish[ing] a national standard for minimum levels of accessibility in all new facilities," *Indep. Living Res.*, 982 F.Supp. at 714, the ADAAG removes the risk of vexatious litigation that a more subjective test would create. Those responsible for new construction are on notice that if they comply with the ADAAG's objectively measurable requirements, they will be free

---
[24] 42 U.S.C. § 12182(a)
[25] *Chapman I, supra,* 631 F.3d at 947 (emphasis added)

from suit by a person who has a particular disability related to that requirement.[26]

The *Chapman* court not have been clearer: "Where the barrier is related to the particular plaintiff's disability, however, an encounter with the barrier *necessarily injures* the plaintiff by depriving him of full and equal enjoyment of the facility."[27]

Plaintiff is a wheelchair user and the lack of a wheelchair accessible transaction counter affects her disability. She suffers from arthritis in her hands, knees and hips, and doesn't have the level of motor acuity that someone with full control of their hands and fingers would. Counter space allows Ms. Lindsay to open her wallet or purse on the counter to get stuff out of it without fear of it falling on the floor.

## IV. CONCLUSION

Starbucks has chosen to implement and maintain a sales counter that violates the ADA by not providing useable clear width space. It has been sued repeatedly and successfully for this practice. There is no triable issue as to the counter violation. The facts are clear. The law is clear. Plaintiff respectfully requests this court grant her motion for summary judgment as to this barrier.

Dated: November 26, 2018      CENTER FOR DISABILITY ACCESS

　　　　　　　　　　　　　　By:  /s/ Chris Carson
　　　　　　　　　　　　　　Chris Carson, Esq.
　　　　　　　　　　　　　　Attorneys for Plaintiff

---

[26] [*Chapman, supra,* 631 F.3d at 947, fn. 5.]
[27] *Chapman I, supra,* 631 F.3d at 947, fn. 4 (emphasis added)